UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

LISA N. NEWSOME,

  Plaintiff,

  v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA;

and

DAVITA INC LONG TERM DISABILITY
INSURANCE PLAN,

  Defendants.

**COMPLAINT**
Case Number: 22-CV-545

---

Plaintiff, Lisa N. Newsome, through her attorneys, Alan C. Olson & Associates, s.c., by Brianna M. Covington and Alan C. Olson, bases her Complaint against Defendants, The Prudential Insurance Company of America and DaVita Inc Long Term Disability Insurance Plan (collectively Defendants), on the following allegations:

### NATURE OF THE CASE

1. Plaintiff, Lisa N. Newsome, brings suit under the Employee Retirement Income Security Act of 1974, ("ERISA") [29 U.S.C. §1001 *et. seq.*] against Defendants, The Prudential Insurance Company of America and DaVita Inc Long Term Disability Insurance Plan, to recover disability benefits, including long-term disability (LTD) benefits, pursuant to a LTD Plan.

### JURISDICTION AND VENUE

2. Jurisdiction over Lisa N. Newsome's ERISA claim is conferred on this Court by 28 U.S.C. § 1331, and ERISA § 502(e) [29 U.S.C. § 1132(e)(2)].

3. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. §1391, in that the Defendant, The Prudential Insurance Company of America, resides in the Eastern District or can be found in the Eastern District.

## CONDITIONS PRECEDENT

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## PARTIES

5. Plaintiff, Lisa N. Newsome (Newsome), is an adult resident of Georgia.

6. Defendant, The Prudential Insurance Company of America (Prudential), is headquartered at 751 Broad Street, Newark, NJ 07102, and licensed by the State of Wisconsin to sell disability insurance to the public, has had significant and continuous business contacts throughout the State of Wisconsin, can be found in Wisconsin, and maintains its registered agent at CT Corporation System, 301 S. Bedford Street, Suite 1, Madison, WI 53703.

7. Defendant, DaVita Inc Long Term Disability Insurance Plan (the Plan), is part of an ongoing administrative scheme for the specific purpose of providing disability income to Plan participants past the termination of their employment from DaVita Inc.

## OPERATIVE FACTS

8. Newsome was employed by DaVita Inc (DaVita), a healthcare company.

9. Most recently, Newsome worked as a Chronic Licensed Practical Nurse (LPN) III.

10. As a benefit of her employment, DaVita provided Newsome with LTD insurance coverage under the Plan.

11. Prudential is the claims administrator for the Plan.

12. Prudential is a fiduciary under the Plan.

13. The Plan is fully insured by Prudential pursuant to a group policy, Group Contract Number G-52201-CO.

14. To be eligible for LTD benefits, Newsome must be disabled as defined by the Plan.

15. Under the Plan,

> You are disabled when Prudential determines that:
>
> - You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury, and
> - You are under the regular care of a doctor, and
> - You have a 20% or more loss in your monthly earnings due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
>
> - You are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
> - You are under the regular care of a doctor.

16. The Plan defines "gainful occupation" as "an occupation, including self-employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds: 60% of your indexed monthly earnings, if you are working; or 50% of your monthly earnings, if you are not working."

17. After an elimination period of 180 days, the Plan provides for a monthly LTD benefit equivalent to 60% of the participant's monthly earnings.

18. Newsome suffers from several medical conditions, including cervical and lumbar disc degeneration, cervical and lumbar spondylosis, muscle spasms of the neck and back, lumbar radiculopathy, chronic pain syndrome, osteoarthritis, hypertension, history of transient ischemic attack (TIA), gastroesophageal reflux disease (GERD), insomnia, anxiety, and depression.

19. As a result of her medical conditions, Newsome experiences severe pain throughout her body, including in her neck, back, sacrum, shoulders, wrists, hands, and fingers.

20. Newsome's medical conditions also cause swelling, stiffness, muscle spasms, and numbness and tingling in her extremities.

21. Newsome's constellation of medical conditions cause her significant functional impairment, including impairment in her ability to sit, stand, walk, and use her arms and hands.

22. In 2005, Newsome underwent a bilateral knee replacement.

23. In 2013, Newsome underwent a proximal row carpectomy, carpal tunnel, and ganglion cyst surgery on her left hand.

24. On or around October 5, 2015, Newsome took a leave of absence from work due to her severe neck and back pain.

25. After ceasing work in 2015, Newsome applied for and received short-term disability benefits and LTD benefits under DaVita's prior disability insurance policy through Hartford Insurance.

26. In September 2016, Newsome underwent surgery on her cervical spine, which involved discectomies and a fusion at the C4 through C7 vertebral levels.

27. On January 1, 2017, DaVita transferred its LTD insurance coverage to Prudential, and Prudential assumed management of Newsome's LTD claim.

28. On March 27, 2017, Newsome attempted to return to work as a Chronic LPN III at DaVita.

29. Upon Newsome's return to work, her pain worsened again and she had difficulty performing the physical requirements of her job, including bending, standing, walking, lifting, pushing, and sitting for prolonged periods of time.

30. Due to her worsening symptoms, Newsome stopped working again on May 11, 2017, at the recommendation of her treating primary care physician at the time, Oluranti A. Aldesanmi, MD.

31. After Newsome ceased working again in 2017, she applied for LTD benefits pursuant to the Plan.

32. On December 14, 2017, the Social Security Administration approved Newsome's claim for Social Security Disability Insurance (SSDI) benefits, based on its determination that she was disabled from performing any substantial gainful activity as of September 16, 2016.

33. As result of her SSDI award, Newsome's monthly LTD benefits were reduced, and she was required to reimburse Prudential for an overpayment of her past LTD benefits.

34. On December 15, 2017, Prudential approved Newsome's LTD benefits and reinstated her LTD benefits effective May 11, 2017.

35. In 2018, Prudential began reviewing Newsome's LTD claim under the Plan's "any gainful occupation" standard, which applied to Ms. Newsome's claim effective May 11, 2019.

36. In November 2018, Newsome underwent a right carpometacarpal arthroplasty.

37. On or around December 20, 2018, Dr. Aldesanmi completed an Attending Physician Statement (APS) in support of Newsome's LTD claim.

38. On the December 20, 2018 APS, Dr. Aldesanmi opined that Newsome was not able to work on a part or full-time basis and that she had the following restrictions:

    a. Stand occasionally;

    b. Walk occasionally;

    c. Sit occasionally;

  d. Occasionally lift up to 10 pounds;

  e. Never climb stairs, ladders, balance, stoop, or kneel/crawl; and

  f. Occasionally reach at desk level, reach overhead, handle, finger, and keyboard.

  39. In January 2019, Prudential hired an independent nurse consultant, Christina K. Moran, RN, to review Newsome's claim.

  40. Upon reviewing Newsome's medical records, Moran concluded that she had the following restrictions:

  a. Stand occasionally;

  b. Walk occasionally;

  c. Sit occasionally;

  d. Reach at desk level occasionally;

  e. Reach overhead occasionally;

  f. Right handing/mousing/fingering/keyboarding occasionally;

  g. Left handling/mousing/fingering/keyboarding occasionally; and

  h. Lift and carry up to 10 pounds occasionally.

  41. After receiving Moran's January 2019 report, Prudential conducted an Employability Assessment (EA) to identify gainful alternative occupations that Newsome could perform within the restrictions identified by Moran.

  42. The EA determined that the restrictions identified by Moran were "too restrictive" and that there were no alternative gainful occupations that Newsome could perform.

  43. The EA also noted that Newsome would "require greater capacity for sitting and/or standing/walking as well as increased upper extremity [*sic*] for alternative gainful occupations to be identified."

44. Based on Moran's January 2019 report and the EA, Prudential approved Newsome's LTD benefits under the Plan's "any gainful occupation" standard on February 5, 2019.

45. Throughout 2019, Newsome frequently attended appointments with her pain management physician, Parchelle D. Connally, MD, who consistently noted that Newsome had severe neck and back pain that was "not well controlled."

46. Throughout 2019, Dr. Connally's objective examinations of Newsome revealed limited range of motion of her cervical and lumbar spine, tenderness in her neck and back, limited strength in her bilateral upper extremities, abnormal gait, and difficulty transferring from sitting to standing.

47. On or around May 10, 2019, Newsome underwent a cervical medial branch block to her right C3, C4, and C5 vertebral levels, which did not provide her with lasting pain relief.

48. In July 2019, Prudential sent Newsome's claim back to Moran for further review.

49. Upon reviewing Newsome's updated medical records, Moran noted that Newsome was "basically in the same capacity as she was in the last review," but updated her restrictions as follows:

    a. Stand occasionally;

    b. Walk occasionally;

    c. Sit frequently;

    d. Never kneel/crawl;

    e. Reach at desk level occasionally;

    f. Reach overhead occasionally;

    g. Right handling/mousing/fingering/keyboarding occasionally;

      h. Left handling/mousing/fingering/keyboarding occasionally; and

      i. Lift and carry up to 20 lbs. occasionally.

50. Upon receiving and reviewing Moran's July 2019 addendum, Prudential determined that Newsome's condition was "unchanged."

51. In October 2019, Prudential sent Newsome's claim back to Moran for a third review.

52. Upon reviewing Newsome's updated medical records, Moran concluded that Newsome continued to have the same restrictions as she had identified in her July 2019 addendum.

53. In her October 2019 addendum, Moran opined that Newsome's prognosis to return to reliable and sustainable function was guarded, and that her "best anticipated capacity" would include "frequently sit, reach desk level, lift/carry up to 10 lbs." and "occasionally stand, walk, reach overhead, right and left handling/mousing/keyboarding, and lift up to 20 lbs."

54. Upon receiving and reviewing Moran's October 2019 addendum, Prudential again determined that Newsome's capacity remained "unchanged" and "without increase [she] would not be gainful."

55. Based on Moran's October 2019 addendum, Prudential approved Newsome's LTD benefits through December 31, 2019.

56. On or around October 18, 2019, an x-ray demonstrated osteoarthritis in Newsome's right wrist.

57. On or around October 28, 2019, Newsome underwent a lumbar medial branch block to her bilateral L3, L4, and L5 vertebral levels, which did not provide her with significant lasting pain relief.

58. Newsome's medical records from October 2019 through January 2020 note that she was experiencing worsening and uncontrolled pain in her back and hands, which was so severe that she could not sit and sometimes needed a walker for ambulation.

59. In December 2019, Newsome completed an Activities of Daily Living Questionnaire (ADLQ) at Prudential's request, in which she reported significant limitations in her ability to perform several activities of daily living, including dressing herself, preparing meals, traveling, shopping, cleaning, and performing other household chores.

60. On the ADLQ, Newsome also reported that she uses several assistive devices, including a cane, a walker, a wheelchair, a scooter, an electric shopping cart, and a shower chair.

61. In January 2020, a Prudential claims manager noted that Newsome was capable of performing full-time seated work, despite receiving no new medical records since Moran's October 2019 addendum.

62. Rather than sending Newsome's claim back to Moran for further review, or to another independent reviewer, Prudential had an internal employee, Tina Sturgess, RN, conduct a clinical review of the claim in February 2020.

63. Sturgess concluded that Newsome had "the capacity for full time seated activity at least intermittently on a frequent basis sitting, fingering, handling, keyboarding, mousing, reaching [at] desk level (throughout the day doing the aforementioned activities with periodic breaks / self accommodating tasks)" and "occasional standing, walking, and lifting at waist level 10-20 [lbs.]…"

64. In February 2020, Prudential conducted another EA to identify alternative gainful occupations that Newsome could perform within the restrictions identified by Sturgess.

65. Based solely on Sturgess's clinical review, the February 2020 EA identified three sedentary gainful occupations that Newsome could allegedly perform: Insurance Verification Specialist, Admitting Officer/Supervisor Hospital, and Cardiac Monitor/Telemetry Technician.

66. On February 10, 2020, an updated MRI of Newsome's lumbar spine confirmed degenerative findings at all lumbar vertebral levels, including moderate central canal stenosis at L2 through L5 and foraminal stenosis with compression of the exiting nerve roots at L2-L3 and L3-L4.

67. On or around February 24, 2020, Newsome underwent a cervical medial branch block at her left C3, C4, and C5 vertebral levels, which did not provide her with lasting pain relief.

68. On February 26, 2020, Prudential terminated Newsome's LTD benefits.

69. Prudential's February 26, 2020 decision to terminate Newsome's LTD benefits was based on Sturgess's clinical review and the February 2020 EA.

70. Throughout 2020, Newsome frequently attended appointments with Dr. Connally and several other specialists, who continued to note that Newsome's neck and back pain was "not well controlled."

71. In the spring of 2020, Newsome began experiencing worsening headaches and blood pressure fluctuations, for which she frequently sought treatment at urgent care and the emergency department.

72. In August 2020, Newsome was hospitalized for a transient ischemic attack (TIA).

73. For several months following her TIA, Newsome experienced intermittent difficulty walking, paresthesia on her left side, cognitive issues, headaches, episodes of dizziness and near-syncope, fatigue, chest pain, shortness of breath, heart palpitations, and episodes of

high blood pressure, for which she frequently sought treatment at urgent care and the emergency department.

74. In the fall of 2020, Newsome sought treatment for worsening neck pain, pain and swelling in her right hand, and pain and numbness in her left arm and leg.

75. On or around November 11, 2020, Newsome received a corticosteroid injection to her right wrist, which only provided her minimal pain relief.

76. In January 2021, an updated MRI of Newsome's cervical spine demonstrated significant degenerative findings, including spinal canal stenosis and neuroforaminal stenosis at multiple vertebral levels.

77. On or around February 15, 2021, Newsome underwent an EMG, which confirmed left-sided ulnar neuropathy across her elbow and right-sided median neuropathy across her wrist.

78. On or around March 29, 2021, Newsome received a corticosteroid injection to her right wrist, which only provided her pain relief for about three weeks.

79. On June 28, 2021, Newsome filed an administrative appeal of Prudential's denial of her LTD benefits.

80. During the appeal process, Newsome submitted complete medical documentation and verification of her disability to Prudential.

81. Throughout 2021, Newsome frequently attended appointments with several different specialists, who continued to document her severe back and neck pain, severe bilateral hand and arm pain, and numbness in her hands and arms.

82. On or around August 25, 2021, Prudential hired Howard Grattan, MD, to review Newsome's LTD claim.

83. Dr. Grattan did not meet with or physically examine Newsome.

84. Dr. Grattan did not speak with any of Newsome's treating providers.

85. Based solely on his review of Newsome's medical records, Dr. Grattan concluded that she had the following medically necessary restrictions in an 8-hour workday:

　　a. Lifting, carrying, pushing, and pulling 20 pounds occasionally (up to 1/3 of the day) and 10 pounds frequently (1/3 to 2/3 of the day);

　　b. Sitting 60 minutes continually, up to 6 hours per day;

　　c. Walking and standing combined 10 minutes continually, up to 2 hours per day;

　　d. Occasionally (up to 1/3 of the day) twisting, bending, kneeling, crouching, squatting, and climbing stairs;

　　e. No climbing ladders or poles, working at heights, or operating heavy machinery;

　　f. Occasionally (up to 1/3 of the day) reaching below the waist;

　　g. Occasionally (up to 1/3 of the day) reaching overhead;

　　h. No restrictions with reaching at waist level; and

　　i. Fingering, handling, feeling, and grasping frequently (1/3 to 2/3 of the day).

86. Upon receiving Dr. Grattan's report, Prudential conducted an updated EA.

87. Based solely on Dr. Grattan's opinions, the updated EA affirmed the conclusions of the February 2020 EA.

88. In October 2021, Newsome started a course of occupational therapy for her right wrist and hand.

89. In November 2021, Newsome's hand and wrist surgeon, Opeyemi Lamikanra, MD, noted that Newsome would be undergoing surgery on her right wrist in 2022, after preparing her home support for surgery.

90. On November 18, 2021, Newsome's primary care physician, Mayyada Holt, MD, noted that her return-to-work date remained "undetermined."

91. On November 30, 2021, Newsome filed a response to Dr. Grattan's report and the updated EA, which included additional medical records in support of her claim.

92. On December 4, 2021, Newsome underwent a Functional Capacity Evaluation (FCE) to objectively measure her functional limitations.

93. The FCE objectively confirmed that Newsome has the following activity tolerances per day:

   a. Sitting for 20 minutes at a time, for a maximum total of 2 hours and 30 minutes per day;

   b. Standing for 20 minutes at a time, for a maximum total of 2 hours and 30 minutes per day; and

   c. Walking for 10 minutes at a time, for a maximum of 2 hours and 30 minutes per day.

94. The FCE also objectively confirmed that Newsome is unable to lift, carry, push, or pull any weight and is limited to rare use of her hands and arms to perform reaching, simple grasping, holding, turning objects, firm power gripping, holding, turning objects, simple picking-up, squeezing, pinching small objects, and sensory activities that consist of touching and feeling.

95. Based on Newsome's performance on the FCE, the physical therapist who conducted the FCE concluded that she has "less than sedentary" physical work capacity.

96. Prudential provided Newsome's FCE and her other updated medical records to Dr. Grattan for an addendum review.

97. On January 11, 2022, Dr. Grattan wrote an addendum to his report, in which he noted that his assessment of Newsome's functionality for the period of February 27, 2020 through November 3, 2021 was unchanged, but that Newsome would have additional restrictions as of November 4, 2021.

98. In his January 11, 2022 addendum report, Dr. Grattan disregarded the objective results of Newsome's FCE and alleged that her medical records "did not include any findings of the severity which would fully support" the FCE's results.

99. On February 21, 2022, Newsome filed a response to Dr. Grattan's addendum report.

100. On March 9, 2022, Prudential upheld its February 26, 2020 decision to terminate Newsome's LTD benefits.

101. Prudential's March 9, 2022 decision was based on Dr. Grattan's review and addendum.

102. Newsome was eligible for and entitled to receive LTD benefits under the Plan beyond February 26, 2020.

103. Newsome provided all information requested by Defendants regarding her claim under the Plan.

104. Defendants ignored clear medical evidence of Newsome's medical conditions, restrictions, functional impairments, and disability in denying her claim under the Plan.

105. Defendants unreasonably ignored Newsome's objective clinical evidence of functional loss and instead adopted the erroneous and contradictory opinions of its paid reviewer without explaining why Newsome's evidence was not credible.

106. Defendants failed to provide a detailed explanation as to why they rejected the specific evidence in Newsome's file that shows she is disabled.

107. Defendants have arbitrarily, capriciously, and unreasonably refused to compensate Newsome her LTD benefits pursuant to the Plan and ERISA.

108. Defendants' denial of Newsome's LTD benefits caused her to suffer the loss of benefits and to incur expenses.

## CLAIM FOR RELIEF
## ERISA § 502(a)(1)(B)

The allegations of this Complaint raise violations of ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)] by Defendants' improper refusal to compensate Newsome her long-term disability benefits under the Plan.

Plaintiff, Lisa N. Newsome, demands relief as follows:

A. Judgment against Defendants awarding Plaintiff damages for losses of benefits pursuant to the Plan and ERISA;

B. Judgment against Defendants awarding Plaintiff her costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting this claim, together with interest on said fees, pursuant to ERISA § 502(g)(1) [29 U.S.C. § 1132(g)]; and

C. Such other relief as the Court deems just and equitable.

Dated this 5th day of May, 2022.

s/ Brianna M. Covington
Brianna M. Covington, SBN 1093864
Alan C. Olson, SBN 1008953
Alan C. Olson & Associates, S.C.
Attorneys for Plaintiff
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324

Email: BCovington@Employee-Advocates.com
Email: AOlson@Employee-Advocates.com